# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————————— )
MARIANNE DIAZ, individually and as mother and next )
friend of two minor children Jane Doe and Jane Roe, )
BRYANT ALEQUIN, and JOSHUA MATOS, )
                              Plaintiffs, )
 )
 )
v. )
 )
SGT. JAMES P. DEVLIN, DET. NICHOLAS E. NASON, )
DET. JEFFREY CARLSON, )
LT. DET. JOSEPH SCAMPINI, SGT. RICHARD CIPRO, )
DET. JAMES CARMODY, OFF. ANTHONY LORENTE,`)
DET. TERRENCE GAFFNEY, DET.JOHN MORRISEY, )
DET.SHAWN BARBALE, DET.RONALD REMILLARD,)
OFF. REBECCA AGUILAR, OFF. ELIAS BAEZ, )
CITY OF WORCESTER, CHIEF GARY J. GEMME, )
CAPT. PAUL SAUCIER, )
CITY MANAGER EDWARD M. AUGUSTUS, )
POLICE INFORMANT CR-1, and OFFS. JOHN DOE 1-4,)
                            Defendants. )
———————————————————————— )

**CIVIL ACTION
NO. 16-40039-TSH**

## <u>MEMORANDUM AND ORDER</u>
### January 10, 2017

**HILLMAN, D.J.**

### <u>Nature of the Case</u>

Plaintiffs, Marianne Diaz ("Diaz"), individually and as mother and next friend of two minor children ( individually ("M1" and "M2" and collectively, the "minor children"), Bryant Alequin ("Alequin") and Joshua Matos ("Matos") have filed suit against the City of Worcester ("City") and individual Defendants Sergeant James P. Devlin, Detective Nicholas E. Nason ("Det. Nason"), Detective Jeffrey Carlson ("Det. Carlson"), Lieutenant Detective Joseph

Scampini, Sergeant Richard Cipro, Detective James Carmody, Officer Anthony Lorente,

Detective Terrence Gaffney, Detective John Morrisey, Detective Shawn Barbale, Detective

Ronald Remillard, Officer Rebecca Aguilar, Officer Elias Baez, Chief Gary J. Gemme, Captain

Paul Saucier, City Manager Edward M. Augustus, Police Informant Cr-1 ("CI"), and Offs. John

Doe 1-4. Plaintiffs allege that their rights were violated and they suffered personal injuries when

state and local law enforcement agents executed a search warrant at their apartment. They allege

claims against the Defendants under 42 U.S.C. §1983 for violation of their Fourth, Fifth and

Fourteenth Amendment Rights, corresponding claims under the Massachusetts Civil Rights Act,

Mass.Gen.L. ch. 12, §§11I ("MCRA")[1], and state law tort claims for false arrest, conspiracy,

assault and battery, assault with a deadly weapon, intentional infliction of emotional distress,

trespass, and fraud.

  This Order addresses Defendant Jeffrey Carlson's Motion To Dismiss (Docket No. 35).

For the reasons set forth below, the motion is *granted*.

## **Discussion**

### *Standard of Review*

  Det. Carlson seeks to dismiss the claims against him pursuant to Fed.R.Civ.P. 12(b)(6)

for failure to state a claim.  On a Rule 12(b)(6) motion to dismiss, the Court "must assume the

truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences

therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing

*Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the plaintiff

---

[1] In their Complaint, Plaintiffs cite to the MCRA as "M.G.L. c. 112 §11IM". *See* Complaint, at p.24. Chapter 112 of the Massachusetts General Laws deals with the registration of certain professions and occupations, while the MCRA, *Chapter 12 §11I*, deals with the violation of constitutional rights.  Plaintiffs' counsel have filed numerous complaints in this Court during my nearly 11 year tenure which contain this incorrect statutory reference and I have on multiple occasions expressly commented on their error. Nonetheless, counsel for Plaintiffs inexplicably continue to file complaints containing the incorrect statutory reference.

must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm.*, LLC, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotations and original alterations omitted). "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernàndez v. Fortuño-Burset,* 640 F.3d 1, 13 (1st Cir. 2011).

## *Facts*

Det. Carlson of the Massachusetts State Police ("MSP") was part of an ongoing joint investigation with the Worcester Police Department ("WPD") into an individual by the name of Shane Jackson ("Jackson"), who was a suspected crack cocaine dealer. Law enforcement had previously executed a search warrant targeting Jackson at an apartment located at 17 Hillside Street, Worcester, Massachusetts, Apartment 3 ("Apartment"); this search, which took place on September 22, 2014, was conducted pursuant to a search warrant issued by the a Worcester District Court magistrate. Jackson had a prior conviction for drug dealing and the affidavit in support of the search warrant stated that he had a firearm. The search yielded digital scales with apparent drug residue, but no gun or drugs.

3

Jackson moved out of the Apartment on or about May 1, 2015, and thereafter, Diaz, her two minor children, Alequin (Diaz's fiancé and the father of M2, Diaz's youngest child) and Matos moved in. Law enforcement continued to investigate Jackson. On March 30, 2015, Det. Carlson conducted surveillance of him at an address on Fox Street in Worcester, MA. Two days later Jackson was arrested and charged with narcotics distribution; the charges were later dismissed. On or about August 5, 2015, a default warrant the Worcester District Court mailed to Jackson at the Apartment was returned because he no longer resided there. On August 6, 2015, WPD officers arrested Jackson and charged him with larceny over $250 for stealing a phone from a convenience store. When Jackson was arraigned that same day, he did not list the Apartment as his address. Det. Carlson and other law enforcement agents investigating Jackson knew that the owner/landlord of the Apartment was O&R Realty Trust. Motor vehicle records, probation records and electric company records indicated that Plaintiff lived at the Apartment in August 2015.

Notwithstanding readily available information indicating Jackson had moved and that Plaintiffs now resided in the Apartment, on August 17, 2015, Det. Nason, who worked with Det. Carlson on the Jackson investigation, applied to the District Court for a no-knock search warrant targeting Jackson at the Apartment. The only information supporting the warrant was gathered from the CI. According to the affidavit, Jackson was staying at the Apartment and had guns in his possession. More specifically, the CI, who was described as a reliable informant and drug user, told Det. Nason that Jackson was staying at the Apartment and the CI had been in the Apartment within the previous 72 hours and saw two guns (a 9mm pistol and a .22 pistol). This information was false. Law enforcement agents did not conduct surveillance of the area (to see if Jackson resided there) before executing the no-knock search warrant on August 19, 2015. They

did not check the mailbox to see who was listed as residents of the apartment and did not contact the landlord to confirm who was living there prior to conducting the raid. The CI claimed that Jackson was working with a female accomplice, but law enforcement officers did not show the CI a picture of Diaz to determine whether she was the female that s/he had observed with Jackson.

Police executed the warrant shortly after 5:00 AM on August 19, 2015. Det. Carlson was involved in planning and approving the raid. Armed SWAT officers entered a bedroom where Diaz – naked due to the warm weather – was sleeping with her children, shouting obscenities at her. The officers would not allow Diaz to move or cover herself until they had searched the room. Eventually she was allowed to cover herself with a bathrobe and a female police officer performed a pat frisk on her, reaching under the bathrobe to do so. Matos had been sleeping on a couch in the living room when the raid began. Officers ran at him, pointed weapons at him, and shouted obscenities at him. Matos complied with requests to drop to the floor, but when he told the officers that he had an injured wrist and a fracture from a recent accident, they ignored him and one officer stepped on his hand. Alequin had been in the bathroom preparing for work when the raid began. An officer kicked the door in and Alequin fell back. Officers seized him, twisted his arm behind his back, and aimed a sub-machine gun at him. When he asked why the officers were raiding his home, they ignored his question as they handcuffed him. Officers searched the apartment. Ultimately, they found nothing of interest. When officers produced photographs of Jackson and an alleged accomplice, Plaintiffs insisted they did not know them. The police then left.

Following the raid, M1, the older of the minor children refuses to sleep alone and has been treated for anxiety. Her younger sister, M2, was treated for sleep disruption and still

5

awakens some nights in terror.  Alequin sought help and was diagnosed as needing psychiatric treatment.  A broken bone in Matos's hand was re-fractured, and he has sought treatment for debilitating anxiety and depression.  Diaz says she suffers stress and anxiety over the impact of the raid on her children and fiancé, but it is unclear if she has sought medical help for these issues.

<u>Whether Plaintiffs have stated a Plausible Claim against Det. Carlson</u>

Det. Carlson asserts that Plaintiffs' allegations in the Complaint are insufficient to state a claim against him in relation to the planning and execution stages of the raid.  Plaintiffs, in response, concede that they do not catalogue every aspect of Det. Carlson's involvement with the investigation and raid, but they argue the complaint and the reasonable inferences therefrom make out a plausible claim.  In particular, Plaintiffs argue that there are sufficient facts asserted to support and inference that Det. Carlson was a key member of the investigation who was personally involved in planning and conducting the raid.

<u>*Unreasonable Search and Seizure and Excessive Force (Count I)*</u>

In Count I of their Complaint, Plaintiffs' assert claims against Det. Carlson under Section 1983 for violation of their constitutional right to be free from unreasonable searches and seizures, and excessive force.  To state a claim under Section 1983, a plaintiff must show that the challenged conduct was committed by a person acting under color of state law and that the conduct worked a deprivation of rights, privileges, or immunities secured by the Constitution or federal law.  42 U.S.C. §1983; *Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir. 1997), *cert. denied*, 522 U.S. 819 (1997).  Section 1983 liability "may be imposed both for action that deprives a plaintiff of a constitutional right and for failure to act, when there is a duty to act, to prevent such a deprivation." *Clark v. Taylor*, 710 F.2d 4, 9 (1st Cir. 1983). Liability may be imposed against

an individual officer as the result of his own action/inaction, or for failure to properly supervise subordinate officers.  However, in civil rights actions, supervisors are not vicariously liable for the misconduct of those under their command. The supervisor's action or inaction must be affirmatively linked to the subordinate's behavior "in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." *Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008)(citation to quoted case omitted).  "The requirement of an 'affirmative link' between the behavior of a subordinate and the action or inaction of his supervisor 'contemplates proof that the supervisor's conduct led inexorably to the constitutional violation.'" *Id.* (citation to quoted case omitted).  Where the claim is one for excessive force, an officer, whether sued directly or in his supervisory capacity, must have been in a position to prevent the physical harm perpetrated by another officer. *Walker v. Jackson*, 56 F.Supp.3d. 89, 98 (D.Mass. 2014).  Moreover, the First Circuit has noted that liability for failure to act "has most often been found when the defendant is in a supervisory position over the parties whose conduct plaintiff complains of." *Maldonado Santiago v. Velazquez Garcia*, 821 F.2d 822, 831 (1st Cir. 1987) ("Section 1983 imposes a causation requirement similar to that of ordinary tort law").

For purposes of this motion, Det. Carlson does not argue that the Plaintiffs' constitutional rights were not violated, rather he argues that Plaintiffs have not alleged any facts which establish that any action or inaction on his part caused any such violations, either by him directly, or in his supervisory capacity.  Plaintiffs have made general allegations that Det. Carlson was a member of the WPD vice squad involved in the Jackson investigation, had Jackson under surveillance at another address, helped plan the raid, and "assisted" in carrying out the raid.  Plaintiffs have not pled any specific facts which link Det. Carlson, directly or indirectly, to any the alleged unlawful

conduct. Such bare-bones allegations are insufficient to establish a plausible Section 1983 claim against Det. Carlson for illegal search and/or use of excessive force.   Plaintiffs suggest that Det. Carlson may be liable for the violations of their rights as a supervisor of those officers who were involved in the raid.  However, even assuming that Det. Carlson was the supervisor of the officers who executed the raid, as to the excessive force claim, courts have extended section 1983 liability only to those police supervisors who were physically present and either directed their subordinates to violate others' rights or failed to intervene to prevent their subordinates from violating others' rights.  As discussed above, Plaintiffs have not pled any facts which establish that Det. Carlson was present at the Apartment, and, even if they had, they have not alleged that he directed his subordinates to use force against them, or that he was in a position to intervene.  Det. Carlson's mere presence, his planning and/or execution of the raid is insufficient "to create the affirmative link necessary for a finding of supervisory liability." *Maldonado v. Fontanes,* 568 F.3d 263, 275 (1st Cir. 2009).

As to Plaintiffs' Section 1983 supervisory claim against Det. Carlson for illegal search and seizure, as stated above, Plaintiffs' barebones allegations fail to state a plausible claim against Det. Carlson for a direct violation.  As to the claim asserted against him in his supervisory capacity, Plaintiffs have failed to link any action or inaction of Det. Carlson the behavior of a subordinate which led to a constitutional deprivation. Instead, Plaintiffs rely on conclusory allegations and unsupported speculation, which is insufficient to establish the affirmative link necessary to establish the deliberate indifference on the part of Det. Carlson in his supervisory capacity.

For the reasons set forth above, I find that Plaintiffs have not alleged plausible Section 1983 claims against Det. Carlson for excessive force or illegal search and seizure. Therefore, those claims are dismissed.

### *False Arrest (Count III)*

In Count III of their Complaint, Plaintiffs assert a claim against Det. Carlson for false arrest. Under Massachusetts law, "the tort of false imprisonment consists of (1) intentional and (2) unjustified (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement.  Police officers may be liable for this tort unless the police officer had a legal justification for the restraint. Such justification exists where the officer had probable cause to arrest the suspect. The probable cause standard is a relatively low threshold for police officers to establish. It is met when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime." *Barbosa v. Conlon*, 962 F. Supp. 2d 316, 334–35 (D. Mass. 2013)(citations to quoted cases and internal quotation marks omitted). The First Circuit has held that "[p]ersons other than those who actually effect an imprisonment may be so related to the act or proceeding as instigators or participants therein to be jointly liable, for all who aid, direct, advise, or encourage the unlawful detention of a person are liable for the consequences."  *Wagenmann v. Adams*, 829 F.2d 196, 209-10 (1st Cir. 1987) (internal citations omitted).  "[T]he arrest by the officer must be so induced or instigated by the defendant that the act of arrest is made by the officer, not of his own volition, *but to carry out the request of the defendant*."  *Id.* (emphasis added).

As with their Section 1983 claim, Plaintiffs have not asserted any facts which would establish that Det. Carlson was at the Apartment as part of the police raid.  On the contrary, Plaintiffs detail the activities of other police officers during the raid, listing members of the entry team and describing which officers entered each room and interacted with the Plaintiffs.  In contrast, as to Det. Carlson Plaintiffs simply assert that he "assisted in the raid" without any

specific description of any actions taken by him or directed to be taken by him.  Consequently, I find that Plaintiffs have failed to allege a plausible claim against Det. Carlson for false arrest and therefore, this claim is dismissed.

### *Conspiracy (Count IV)*

In Count IV, Plaintiffs allege that Det. Carlson and others engaged in a conspiracy to violate their civil rights.  In order to establish the existence of a conspiracy, a plaintiff must prove that "a combination of two or more persons act[ed] in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages."  *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008) (internal citation omitted).  Where the claim is brought pursuant to Section 1983 for violation of the plaintiff's civil rights, the plaintiff must also show that the conspiracy resulted in "an actual abridgement of some federally-secured right." *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001); *see Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988); *see also* 42 U.S.C. §1983 (requiring the deprivation of a federal right).  A conspiracy may be a "matter of inference[.]"  *Estate of Bennett*, 548 F.3d at 178.  However, a claim of conspiracy to deprive a plaintiff of civil rights will not survive a motion to dismiss if it makes conclusory allegations without making supporting factual assertions.  *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977).

The Plaintiffs make various conclusory allegations about the mindsets of those involved with the investigation.  However, other than those legal conclusions which as a matter of law are insufficient to state a claim, the Complaint does not contain any allegations that would support an inference that there existed a concrete agreement between the officers involved in the investigation to inflict any injury on or violate the rights of Plaintiffs.  Moreover, the Complaint does not allege

anything about Det. Carlson's actions following the raid, and thus does not plausibly establish that he participated in a conspiracy to cover up any of the alleged unlawful events.  Accordingly, Plaintiffs' claim against Det. Carlson for conspiracy to violate their civil rights is dismissed.

### Assault and Battery; Assault and Battery with a Dangerous Weapon  (Counts V and VI)

In Count V, Plaintiffs assert a state tort law claim against Det. Carlson for assault and battery. In Count VI, they asset a claim against him for assault and battery with a deadly weapon.[2] Civil assault requires that a defendant "act[ed] intending to cause a harmful or offensive contact" with a plaintiff, "or [acted to create] an imminent apprehension of such a contact," and that a plaintiff was "thereby put in such imminent apprehension."  Restatement (Second) of Torts §21 (1) (Am. Law Inst. 1965); *see also Conley v. Romeri*, 806 N.E.2d 933, 939 n. 6 (Mass. App. Ct. 2004) (citing Restatement).  "The intent required [for civil assault] is the intent to make the victim apprehensive of immediate physical harm."  *Commonwealth v. Musgrave*, 649 N.E.2d 784, 787 (Mass. App. Ct. 1995) (quoting Nolan & Sartorio, Tort Law §12(1) (2d ed. 1989)).  The tort of battery represents a completed assault in that the intention of a defendant to cause a harmful or offensive contact resulted, directly or otherwise, in such a harmful or offensive contact.  *See Waters v. Blackshear¸* 591 N.E.2d 184, 185-6 (Mass. 1992).  "Under Massachusetts tort law, a defendant need not 'be able instantly to carry out the physical violence threatened by his conduct.'"  *Kennedy v. Town of Billerica*, 617 F.3d 520, 539 (1st Cir. 2010) (quoting *Ginsberg v. Blacker*, 852 N.E.2d 679, 684 n. 8 (Mass. App. Ct. 2006)).  "[R]ather, '[i]t is enough that one is so close to striking distance that he can reach [a plaintiff] almost at once.'"  *Id.* (finding that the focus of Massachusetts tort law is on those who actually committed the challenged conduct).

---

[2] Plaintiffs have not cited to any law which would support a tort claim for assault and battery with a deadly weapon distinct from their generic assault and battery claim. For that reason, this claim should be dismissed as duplicative of their assault and battery claim.  However, given that Plaintiffs have failed to allege any facts which would support such a claim against Det. Carlson, the Court need not address the issue.

Claims of assault and battery can lie against police officers who use excessive force in the discharge of official duties. *See Raiche v. Pietroski*, 623 F.3d 30, 40 (1st Cir. 2010) (holding that defendant police officer used excessive force when he tackled motorcyclist who was pulled over for not wearing helmet and for failing to stop when signaled to do so). In analyzing excessive force claims, courts determine whether "the defendant officer employed force that was unreasonable under the circumstance*s*." *Jennings v. Jones*, 499 F.3d 2, 11 (1st Cir. 2007). Determining whether the force employed was unreasonable under the circumstances requires a court to balance three non-exclusive factors: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865 (1989).

As I found with respect to Plaintiffs' Section 1983 excessive force claim against Det. Carlson, they have not pled any facts which support a finding that Det. Carlson was part of the raid team much less that he committed an assault and battery against them. Accordingly, these claims are dismissed against Det. Carlson.

### Count VII, Violations of the Massachusetts Civil Rights Act (Count VII)

In Count VII, Plaintiffs have asserted excessive force and illegals search and seizure claims against Det. Carlson pursuant to the MCRA. To state a claim under the MCRA, a plaintiff must show "that 1) his exercise or enjoyment of rights secured by the federal or state constitution or laws 2) has been interfered with, or attempted to be interfered with, and 3) the interference or attempted interference was by threats, intimidation, or coercion." *Stone v. Caswell*, F. Supp. 2d 32, 37 (D. Mass. 2013) (quoting *Haufler v. Zotos*, 845 N.E.2d 322, 335 (Mass. 2006)). Courts have said this last requirement – that the "interference or attempted interference was by threats,

intimidation, or coercion" – distinguishes a MCRA claim from a section 1983 claim.  *See Santiago v. Keyes*, 890 F. Supp. 2d 149, 154 (D. Mass. 2012); *Bally v. Northeastern Univ.*, 532 N.E.2d 49, 52 (Mass. 1989).   Other than this additional requirement, the MCRA is generally interpreted coextensively with Section 1983. *See Cocroft v. Smith*, 95 F.Supp.3d 119, 128 (D.Mass. 2015).   Since I have determined that Plaintiffs have failed to state a claim against Det. Carlson under Section 1983, their MCRA claims also fail.

### Intentional Infliction of Emotional Distress (Count VIII)

In Count VIII of their Complaint, Plaintiffs have asserted a state tort law claim against Det. Carlson for intentional infliction of emotions distress.  A plaintiff must establish four elements to state such a claims: "(1) [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct[;] (2) that the conduct was extreme and outrageous, beyond all possible bounds of decency and was utterly intolerable in a civilized community[;] (3) that the actions of the defendant were the cause of the plaintiff's distress[;] and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it." *Agis v. Howard Johnson Co.*, 355 N.E.2d 315, 318-9 (Mass. 1976) (internal citations and quotations omitted); *see also Limon v. United States*, 579 F.3d 79, 94 (1st Cir. 2009).  The standard for what qualifies as such conduct has been set very high to "avoid litigation in situations where only bad manners and mere hurt feelings are involved." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996) (quoting *Agis*, 355 N.E.2d at 318-9).  This high bar requires "targeted and malicious" conduct directed towards the plaintiffs advancing the claim.  *See Rua v. Glodis*, 52 F. Supp. 3d 84, 100 (D. Mass. 2014) (failing to find conduct necessary to sustain an IIED claim where plaintiff did not demonstrate defendants knew or should have known that any serious harm would befall plaintiff); *see also Henriquez v. City of Lawrence*, No. 14-cv-14710-IT, 2015 WL 3913449, *5 (D. Mass. 2015) (citing *Nancy P. v.*

*D'Amato*, 517 N.E.2d 824, 827 (Mass. 1998) ("[t]he focus of [Massachusetts] cases, and of cases elsewhere, dealing with intentional infliction of emotional distress has been on the emotional distress of a single person against whom the extreme and outrageous conduct was directed.")).

At least one judge in this district has held that a plaintiff fails to state a claim for intentional infliction of emotional distress where there was no allegation that a defendant "was present for or took part in the [challenged] events" and no allegation that the defendant "engaged in any conduct directed at" the plaintiff." *Henriquez*, 2015 WL 3913449, at *5. I have previously found that Plaintiffs have failed to assert facts which establish that Det. Carlson was at the Apartment and therefore, they have not asserted specific facts which establish that he "engaged in any conduct directed at" them, They have also failed to allege facts which would support a finding of *intentional* (as opposed to negligent) conduct upon the part of Det. Carlson. For these reasons, I find that Plaintiffs have failed to state a plausible claim against Det. Carlson for intentional infliction of emotional distress.

### *Trespass (Count IX)*

In Count IX of their Complaint, Plaintiffs assert a state law tort claim against Det. Carlson for trespassing on their property. To state a claim for trespass, a plaintiff must show defendant intentionally and illegally entered onto property over which he had actual possession. *McCarty v. Verizon New England, Inc.*, 731 F. Supp. 2d 123, 132 (D. Mass. 2010) (internal citation omitted). Any actual possession of real estate is enough to allow a party in possession to bring a trespass claim against a stranger who interferes with that possession. *New England Box Co. v. C & R Const. Co.*, 49 N.E.2d 121, 128 (Mass. 1943). Once again, Plaintiffs' claim fails because they have failed to allege facts which would support a finding that Det. Carlson was physically present at the Apartment during the raid, or that he oversaw or directed those who did participate in the raid

14

(assuming that he could be held liable under some supervisory theory).  Accordingly, this claim is dismissed against Det. Carlson.

### Conclusion

IT IS HEREBY ORDERED that:

Defendant Jeffrey Carlson's Motion To Dismiss (Docket No. 35) is ***granted***.

**/s/ Timothy S. Hillman**
TIMOTHY S. HILLMAN
DISTRICT JUDGE