UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIANNE DIAZ, individually and as mother and next friend of the two minor children Jane Doe and Jane Roe, BRYANT ALEQUIN, and JOSHUA MATOS,<br><br>    Plaintiffs,<br><br>  v.<br><br>SGT. JAMES P. DEVLIN, DET. NICHOLAS E. NASON, LT. DET. JOSEPH SCAMPINI, SGT. RICHARD CIPRO, DET. JAMES CARMODY, OFF. ANTHONY LORENTE, DET. TERRENCE GAFFNEY, DET. JOHN MORRISSEY, DET. SHAWN BARBALE, DET. RONALD REMILLARD, OFF. REBECCA AGUILAR, OFF. ELIAS BAEZ, CITY OF WORCESTER, CHIEF GARY J. GEMME, CAPT. PAUL SAUCIER, CITY MANAGER EDWARD M. AUGUSTUS, POLICE INFORMANT CR-1, and OFFS. JOHN DOE 1-4,<br><br>    Defendants. | CIVIL ACTION<br><br>NO. 4:16-cv-40039-TSH |

## ORDER

**April 3, 2018**

Hennessy, M.J.

    Before me by way of referral, see Docket #128, are two motions to compel discovery in this civil rights action. First, Plaintiffs move to compel various defendants to respond to a number of interrogatories and document requests. See Docket #109; Docket #110. Second, Defendants move to compel Plaintiffs to produce an affidavit of Mr. Robert Sykes, a percipient witness to the events from which this suit arises. See Docket #125. Both motions are opposed. See Docket #113 (Defendants' opposition to Plaintiffs' motion); Docket #127 (Plaintiffs'

1

opposition to Defendants' motion). The parties argued both motions at a hearing held on March 23, 2018. For the reasons that follow, Plaintiffs' motion to compel further responses is GRANTED IN PART AND DENIED IN PART as set forth below, and Defendants' motion to compel production of Mr. Sykes's affidavit is GRANTED.

I. BACKGROUND

I assume the parties' familiarity with Plaintiffs' allegations in this case. In short, in 2015, Defendant Massachusetts State Police ("MSP") Detective Nicholas Nason applied to the Worcester District Court for a no-knock warrant to search Plaintiffs' residence at 17 Hillside Street, Apartment 3, in Worcester. Detective Nason's affidavit alleged that a reliable confidential informant had reported that days earlier, two individuals with a history of violence were inside Apartment 3 in possession of two handguns. The Worcester District Court issued the warrant, which was executed on August 19, 2015 at around 5:00am by the Worcester Police Department ("WPD") SWAT team and MSP personnel.

SWAT team members breached the front door of Apartment 3 and found all five plaintiffs inside. Plaintiff Marianne Diaz was asleep in the bedroom with her two minor children, Plaintiff Bryant Alequin was in the bathroom preparing to go to work, and Plaintiff Joshua Matos was asleep on a living room couch. Officers roused Plaintiff Diaz and her children, held them at gunpoint, and searched the bedroom. Plaintiff Diaz was unclothed due to the warm weather. Officers did not allow her to cover herself until their search of the bedroom was complete. Later, a female officer arrived and frisked Plaintiff Diaz, reaching under Plaintiff Diaz's bathrobe and thereby allegedly committing a battery. As for Plaintiff Matos, officers ran at him, pointed guns at him, and yelled at him to "get the fuck on the ground." Plaintiff Matos "tried to explain" that he had recently fractured his hand and wrist; he was told to "shut the fuck

2

up" while an officer stepped on his injured hand, causing it to be re-fractured. Docket #1-1 ¶ 161. Plaintiff Alequin was detained after officers kicked down the bathroom door, causing Plaintiff Alequin to fall backwards. Officers twisted his arm behind his back and forced him to the floor at gunpoint. After securing all five plaintiffs, officers searched and caused damage to the apartment. They did not find firearms or the persons for whom they were searching.

Plaintiffs allege that the no-knock warrant was procured based on false information contained in Detective Nason's affidavit. They claim that Defendants used excessive force while executing the warrant and then falsified reports about what took place. And they allege that these actions were caused by a policy, practice, or custom of the Worcester Police Department and by deficient supervision by then-Chief Gemme and City Manager Augustus.

Defendant Detective Jeffrey Carlson filed a motion to dismiss for failure to state a claim. See Docket #35. District Judge Hillman granted that motion. See Docket #74. No other defendant has moved to dismiss. Instead, the remaining defendants moved to bifurcate Plaintiffs' claims during discovery and trial. See Docket #80. Judge Hillman ordered that Plaintiffs' Monell claim will be tried separately from the individual and supervisory claims, but he denied bifurcation as to discovery. Docket #89. Thus, the instant motions arise in the context of discovery as to all claims asserted in this case.

Judge Hillman has entered a protective order governing all documents produced during this case. See Docket #90. That order applies to, among other things,

> Worcester Police Department personnel files; investigation reports generated by the [WPD] Bureau of Professional Standards, formerly known as the Internal Affairs Division; . . . any and all records related to employment and/or disciplinary action for any City of Worcester employee; any answers to interrogatories conveying personnel, Bureau of Professional Standards investigation information and/or disciplinary action related to any City of Worcester employee, and portions of deposition testimony concerning the contents of these documents and such confidential information.

3

Id. at 1. The protective order restricts Plaintiffs' disclosure and use of materials produced in discovery to "the preparation for trial and litigation of this case." See id. at 2-3.

## II. PLAINTIFFS' MOTION TO COMPEL FURTHER DISCOVERY RESPONSES

### A. Standard

The scope of discovery is set forth at Federal Rule of Civil Procedure 26(b)(1):

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The purpose of discovery is to enable the parties "to obtain 'the fullest possible knowledge of the issues and facts before trial.'" LeBarron v. Haverhill Coop. Sch. Dist., 127 F.R.D. 38, 40 (D.N.H. 1989) (quoting 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 2001, at 13). If a party objects to a discovery request on grounds of relevance, the Court may "become involved to determine whether the discovery is relevant to the claims or defenses." In re Subpoena to Witzel, 531 F.3d 113, 118 (1st Cir. 2008) (quoting Fed. R. Civ. P. 26(b)(1)). In this regard, Rule 26(b)(1) "vests the trial judge with broad discretion to tailor discovery narrowly." See Cutter v. HealthMarkets, Inc., No. 10-cv-11488-JLT, 2011 WL 613703, at *2 (D. Mass. Feb. 10, 2011) (quoting Crawford-El v. Britton, 523 U.S. 574, 598 (1998)).

Federal law governs claims of privilege in cases, like this one, over which a federal court exercises federal question jurisdiction. See Fed. R. Evid. 501. A federal court presiding over a non-diversity case may choose to afford state privilege law persuasive or even controlling effect;

4

"but in the last analysis its decision turns upon the law of the United States, not that of any state." D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 471-72 (1942) (Jackson, J., concurring). "Because privileges have the effect of preventing disclosure of information that is relevant to a case, they are disfavored in federal practice." Sterling Merch., Inc. v. Nestle, S.A., 470 F. Supp. 2d 77, 82 (D.P.R. 2006) (citing ACLU of Miss., Inc. v. Finch, 638 F.2d 1336, 1344 (5th Cir. Unit A Mar. 1981)); cf. United States v. Nixon, 418 U.S. 683, 710 (1974) ("[E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." (footnote omitted)). This preference for disclosure is especially strong in federal civil rights actions, which by nature raise issues of "paramount importance": in such cases, a claim of evidentiary privilege "must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action." King v. Conde, 121 F.R.D. 180, 195 (E.D.N.Y. 1988) (Weinstein, J.) (quoting Skibo v. City of New York, 109 F.R.D. 58, 61 (E.D.N.Y. 1985)) (citations omitted).

Federal Rule of Civil Procedure 26(b)(5)(A)(ii) requires that a party that withholds otherwise discoverable information due to a claim of privilege must produce a privilege log that "describe[s] the nature of the documents, communications, or tangible things not produced or disclosed—and do[es] so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii); see In re Grand Jury Subpoena, 274 F.3d 563, 575-76 (1st Cir. 2001). This rule does not require precision "to the point of pedantry," but rather requires a party asserting a privilege claim "to do the best that he reasonably can to describe the materials to which his claim adheres." In re Grand Jury Subpoena, 274 F.3d at 576. "A party that fails to submit a privilege log is deemed to waive the underlying privilege claim." Id.

5

B.  Analysis

As explicitly confirmed by Plaintiffs' counsel at the motion hearing, Plaintiffs' disputed discovery requests pertain to their Monell claim against the City of Worcester (the "City") or their supervisory claims against Chief Gemme and City Manager Augustus. The nature of Plaintiffs' claims informs the proper scope of discovery. See Fed. R. Civ. P. 26(b)(1). Accordingly, at the motion hearing, I asked Plaintiffs' counsel to definitively articulate the policy, practice, or custom underlying the Monell claim.[1] Counsel replied: a lack of accountability within the Worcester Police Department for the use of excessive force and for injuries to civilians resulting from the use of excessive force. My ruling on Plaintiffs' motion to compel is premised on this characterization by Plaintiffs' counsel.

Only five of the numerous discovery requests addressed in Plaintiffs' motion remain in dispute.[2] Each concerns a request to the City. I address them sequentially.

1.  Document Request #5

Plaintiffs request

> [a]ll documents or communications concerning any allegation or complaint from any source against any of the defendants Jeffrey Carlson, Joseph Scampini, Richard Cipro, James Carmody, Anthony Lorente, Terrence Gaffney, John Morrissey, Shawn Barbale, Ronald Remillard, Rebecca Aguilar, or Elias Baez alleging use of excessive force, threatening, or any form of untruthfulness, such as lying, cheating, stealing, or filing false reports.

Docket #110 at 3. Defendants oppose this request on a litany of grounds including relevance, overbreadth, undue burden, and privilege. See Docket #113 at 3-7. For the reasons stated

---

[1] Plaintiffs' complaint is not a model of clarity concerning the policies, practices, or customs alleged. See Docket #1-1 ¶¶ 49-50, 53, 65, 69, 186, 195, 192-98.

[2] Plaintiffs withdrew the other requests in their motion papers or orally at the motion hearing.

6

below, I balance Plaintiffs' need for information against Defendants' arguments against disclosure, and order Defendants to produce some discovery within the scope of this request.

I agree with Defendants that Plaintiffs' request for "[a]ll documents or communications concerning any allegation or complaint" is overbroad. I also find that allegations of "threatening[] or any form of untruthfulness" are of minimal relevance to the alleged policy, practice, or custom underlying Plaintiffs' Monell claim. However, discovery regarding a Monell claim often properly encompasses both pre-event and post-event matters that tend to show the existence and operation of a policy, practice, or custom alleged to have caused a plaintiff to suffer the deprivation of a constitutional right. See 2 Sheldon H. Nahmod, Civil Rights and Civil Liberties Litigation: The Law of Section 1983 § 6:37 (Aug. 2017 update) (collecting cases). Accordingly, I will compel some discovery responsive to this request; but I will limit the period for responsive documents to approximately five years before the incident and through the end of 2017, and narrow the scope of responsive documents as set forth below.

Beyond scope and relevance, Defendants' opposition to Plaintiffs' motion relies on qualified privileges that protect "certain information related to law enforcement activities" as well as so-called "official information." See Docket #113 at 5.[3] Respecting the law enforcement privilege, Defendants point to Roviaro v. United States, 353 U.S. 53 (1957), and Puerto Rico v. United States, 490 F.3d 50 (1st Cir. 2007). In Roviaro, the Court recognized "the informer's privilege," which "is in reality the Government's privilege to withhold from disclosure the

---

[3] As an initial matter, there is some merit to Plaintiffs' argument that Defendants have failed to submit an adequate privilege log, and thereby waived these privileges. While the City did eventually produce a privilege log (submitted to the Court at the motion hearing), the log simply lists for each WPD defendant the date(s) of any excessive force complaints against that officer. Absent is any information that, in compliance with the basic mandate of Rule 26, would enable Plaintiffs (and the Court) to understand how a document—and the log mentions only one type of document, a complaint—is protected by a privilege. Setting aside the privilege log's adequacy, I find that Plaintiffs' need for some responsive information outweighs Defendants' arguments against disclosure.

7

identity of persons who furnish information of violations of law to officers charged with enforcement of that law." 353 U.S. at 59 (citations omitted). The privilege is not absolute; rather, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Id. at 60-61. In practice, the Court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." Id. Puerto Rico v. United States extended the privilege to information revealing "law enforcement techniques and procedures," while reiterating that "this qualified privilege is subject to balancing the federal government's interest in preserving . . . confidentialilty . . . against the requesting party's interest in disclosure." 490 F.3d at 64.

The second privilege on which Defendants rely, the official information privilege, pertains to "confidential information in police files" that is sought in "civil rights cases against state and local law enforcement agencies." Kelly v. City of San Jose, 114 F.R.D. 653, 660-61 (N.D. Cal. 1987) (capitalization altered). This, too, is a qualified privilege: in applying it, "the court must balance the public interest in nondisclosure against the need of the particular litigant for access to the privileged information." Shea v. McGovern, No. 1:08-cv-12148-MLW, 2011 WL 322652, at *5 (D. Mass. Jan. 31, 2011) (citations omitted). As set forth in King v. Conde, 121 F.R.D. 180 (E.D.N.Y. 1988):

> The factors disfavoring disclosure are the threat to the safety of police officers, the invasion of the privacy of police officers, the weakening of law enforcement programs or procedures, the chilling of police investigative candor, the chilling of citizen complainant candor, and state privacy law. The factors favoring disclosure are the relevance of the material to the plaintiff's case, the importance of the material to the plaintiff's case, the strength of the plaintiff's case, and the importance to the public interest in releasing the information.

8

Nat'l Cong. for Puerto Rican Rights ex rel. Perez v. City of New York, 194 F.R.D. 88, 95-96 (S.D.N.Y. 2000) (quoting Morrissey v. City of New York, 171 F.R.D. 85, 92 (S.D.N.Y. 1997) (citing King, 121 F.R.D. at 190-96)); see also Martin v. Conner, 287 F.R.D. 348, 350-51 & n.3 (D. Md. 2012) (collecting cases applying this balancing test). Of these factors, the importance of the material to a plaintiff's case has been recognized as "a most important factor" or "the most important" factor of all. King, 121 F.R.D. at 194 (citations and quotations omitted).

Relying on these two qualified privileges, the City argues first that information Plaintiffs seek will divulge the identities of complainants, which, in turn, will deter the public from filing complaints in the future. The City submits that that it "should not be required to produce any complaints to Plaintiffs without at least the complainants' personal information redacted." Docket #113 at 6.[4] I reject the City's argument. It offers no evidence supporting its empirical argument, and other decisions, including King v. Conde, have concluded to the contrary that:

---

[4] Massachusetts law requires disclosure, upon request, of "any public record" as defined in Mass. Gen. Laws ch. 4, § 7, Twenty-sixth. See Mass. Gen. Laws ch. 66, § 10(a). The City concedes that responsive information is a public record, but argues that two statutory exemptions from disclosure apply. See Docket #113 at 5-7 & n.2. The first exemption concerns "personnel and medical files or information; also any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy." Mass. Gen. Laws ch. 4, § 7, Twenty-sixth(c). This exemption "requires a balancing test between any claimed invasion of privacy and the interest of the public in disclosure." Globe Newspaper Co. v. Police Comm'r of Boston, 648 N.E.2d 419, 425 (Mass. 1995) (collecting cases). "Where the public interest in obtaining information substantially outweighs the seriousness of any invasion of privacy, the private interest in preventing disclosure must yield to the public interest." Id. (quoting Att'y Gen. v. Collector of Lynn, 385 N.E.2d 505, 508 (Mass. 1979)).

The second statutory exemption concerns "investigatory materials necessarily compiled out of the public view by law enforcement or other investigatory officials the disclosure of which materials would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest." Mass. Gen. Laws ch. 4, § 7, Twenty-sixth(f). This exemption does not call for a balancing test. Instead, the Court must ask "whether the materials requested are 'investigatory materials necessarily compiled out of the public view,' and, if so, whether the agency resisting disclosure has demonstrated that their release 'would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest.'" Globe Newspaper Co., 648 N.E.2d at 425. I do not find that state privacy law calls for wholesale denial of the discovery request, as suggested by the City's reference to such law. The City concedes that the records Plaintiffs seek are public records. The City bears the burden of "proving 'with specificity'" that the exemption for investigatory materials applies. See Globe Newspaper Co., 648 N.E.2d at 424. The City has failed to show that disclosure would prejudice effective law enforcement so that such disclosure would not be in the public interest. With respect to privacy interests of police officers, as Defendants concede, such interests can be protected through redactions.

> the more persuasive hypothesis is that disclosure will have no influence on citizen complaints. It is not at all clear that people who feel aggrieved by actions of police officers would even think about the possibility that their complaints might be disclosed to another person who feels aggrieved by police officers.

King, 121 F.R.D. at 193-94 (quoting Kelly, 114 F.R.D. at 666). In addition, Judge Hillman has entered a protective order that restricts the dissemination and use of information produced in discovery. His order facilitates disclosure while providing a measure of privacy protection. Finally, the City argues that many complainants' identities are known to Plaintiffs' counsel, whose practice focuses on police misconduct involving the WPD. To the extent that those identities are known to Plaintiffs' counsel, ordering disclosure does not implicate a privacy interest.

The City also argues that responsive documents may identify police officers' personal medical or other private information. However, the City has not shown that the disputed requests implicate this concern, aside from a general statement that "some" of the desired materials "may" contain officers' private information. Docket #113 at 6-7. The City requests that any such information be redacted. Id. at 6. I find that the City's redaction request adequately addresses any concern respecting police officers' privacy. I thus will permit the City to redact medical or other private personal information from the disclosure ordered herein.

I reject the City's argument that Plaintiffs have no need for discovery of the Defendants' disciplinary histories on the ground that Plaintiffs' counsel has filed all but one of the civilian complaints submitted against the Defendants within five years of the incident. Even assuming that Plaintiffs' counsel are familiar with those complaints, it does not follow that Plaintiffs have available other information properly within the scope of this document request.

The strength of Plaintiffs' case weighs against release. That said, "this principle must not reach so far as to put the plaintiff in a Catch-22: [Plaintiffs] may not be able to demonstrate the

strength of [their] case without the requested materials themselves." King, 121 F.R.D. at 195. I emphasize that I express no view of Plaintiffs' ultimately likelihood of success on the merits. But based on the limited information available to me at this procedural stage, I have misgivings about the strength of Plaintiffs' claims. The Clerk Magistrate issued a no-knock search warrant based on a probable cause finding that individuals known to the WPD as violent were inside Apartment 3 with two firearms. Such a finding raises a question in my view whether there was anything unreasonable or excessive about forced entry by the SWAT team with guns drawn at around 5:00a.m. This factor does not weigh in favor of disclosure.

On the other hand, I consider the factors favoring disclosure set forth in King. See King, 121 F.R.D. at 190-95. As noted above, I use Plaintiffs' articulation of the policy or custom underlying their Monell claim—that officers were not held accountable by the WPD for using excessive force—to determine the scope and limits of discovery. I find that limited discovery on excessive force complaints against the named Defendants, and on action the WPD did or did not take on such complaints, is relevant and important to this claim. "A plaintiff asserting a Monell claim must show there was a municipal custom or policy of deliberate indifference to the commission of constitutional violations by police officers; and this custom or policy was the cause of, and moving force behind, the deprivation which she suffered." Warren v. Rojas, No. 09-cv-40217-FDS, slip op. at 5 (D. Mass. Feb. 17, 2011) (Hillman, M.J.) (citing Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989)). Here, unless Plaintiffs can learn how, when, and to what extent the WPD investigated and sanctioned officers who use excessive force against civilians, Plaintiffs will not be able to show the alleged existence of a policy, practice, or custom that caused them to suffer a violation of a constitutional right.

11

Finally, a strong public interest in protecting constitutional rights against violations by others acting under color of state law also supports disclosure. Section 1983 places enforcement "in the hands of the people. Each citizen acts as a private attorney general who takes on the mantel of the sovereign, guarding for all of us the individual liberties enunciated in the Constitution." Wood v. Breier, 54 F.R.D. 7, 10-11 (E.D. Wis. 1972) (quotation omitted). For this reason, "[l]awsuits brought under [Section] 1983 require special attention to full disclosure." King, 121 F.R.D. at 195. The public interest thus militates strongly in favor of compelling disclosure here.

Balancing these interests, I ORDER Defendants to produce the following in response to Document Request #5.

> For the period from January 1, 2010 through and including December 31, 2017, for each remaining WPD Defendant, the following documents regarding any allegation of the use of excessive force:
>
> - Any complaint alleging use of excessive force (whether submitted by a civilian or any other source), and the date of the complaint's submission. For any such complaint submitted orally, a copy of any original written transcription of the complaint. If any such complaint was filed by a confidential source or cooperating witness, any information tending to identify that source or witness shall be redacted.
>
> - Any police report, related to an incident from which such a complaint arose, that recounts the use of force against the complainant or any civilian during the incident.
>
> - As to each such complaint, a statement whether an investigation was conducted.
>
> - If an investigation was conducted, a description of the investigation, including, without limitation:
>
>   - The agency or bureau that conducted the investigation;
>   - The number of civilian witnesses who gave statements or were interviewed;
>   - The number of law enforcement officers who gave statements or were interviewed;
>   - The number of medical personnel or care providers interviewed;
>   - A description of medical records reviewed; and
>   - A description of police reports reviewed.

12

- For each investigation conducted, a statement of the investigation's findings.

- If any such complaint was substantiated, a statement whether any officer was disciplined; and if so, a description of the discipline.

- If any such complaint was substantiated, a statement whether the matter was referred for a criminal investigation; and if so, when and to whom the referral was made.

Insofar as Plaintiffs seek further response to Document Request #5, that request is denied.

2. Document Request #6

Plaintiffs request

> [a]ll reports concerning any use of force and/or any persons injured in the course of WPD Special Weapons and Tactics ("SWAT") team operations, from January 1, 2004 to the present.

Docket #110 at 3. Defendants object to this request on grounds of overbreadth, undue burden, and proportionality. Docket #113 at 7-8. Defendants also contend that some documents responsive to this request contain "protected medical and personal identifying information that is subject to HIPAA and privacy rights of those involved." Id. at 8. I again agree that Plaintiffs' request is overbroad and calls for information that is disproportional and insufficiently relevant to Plaintiffs' Monell and supervisory claims. Applying the factors discussed above to balance the privacy interests that Defendants have identified against Plaintiffs' need for information, I ORDER Defendants to produce the following:

For each calendar year from 2010 through and including 2017:

- A statement of the number of civilian complaints submitted to the WPD alleging that a WPD officer used excessive force during a SWAT team operation.

- Any such complaint, whether submitted by a civilian or another source, and the complaint's date of submission. For any such complaint submitted orally, a copy of any original written transcription of the complaint. If any such complaint was filed by a confidential source or cooperating witness, any information tending to identify that source or witness shall be redacted.

- As to each such complaint, a statement whether the complaint was investigated.

13

- If an investigation was conducted, a description of the investigation, including, without limitation:

    o The agency or bureau that conducted the investigation;
    o The number of civilian witnesses who gave statements or were interviewed;
    o The number of law enforcement officers who gave statements or were interviewed;
    o The number of medical personnel or care providers interviewed;
    o A description of any medical records reviewed; and
    o A description of any police reports reviewed.

- For each investigation conducted, a statement of the investigation's findings.

- If any such complaint was substantiated, a statement whether any officer was disciplined; and if so, a description of the discipline.

- If any such complaint was substantiated, a statement whether the matter was referred for a criminal investigation; and if so, when and to whom the referral was made.

Insofar as Plaintiffs seek further response to Document Request #6, that request is denied.

3. Document Request #8

Plaintiffs request

[a]ll documents that relate or refer to any criminal investigation conducted by the WPD against a Worcester police officer as a result of a citizen complaint.

Docket #110 at 4. Plaintiffs' counsel conceded at the hearing that this request, which is unbounded as to both time and subject matter, is unduly broad, unduly burdensome, and disproportional to the needs of this case. Again applying the factors discussed above to balance the privacy interests that Defendants have identified against Plaintiffs' need for information, I ORDER Defendants to produce the following:

Reports and other documents, from January 1, 2010 through and including December 31, 2017, generated in connection with a WPD criminal investigation of a WPD officer based on a civilian complaint alleging use of excessive force.

Insofar as Plaintiffs seek further response to Document Request #8, that request is denied.

4. Interrogatories ##2 and 4

Plaintiffs' motion to compel further responses to interrogatories is denied, except to the extent that discovery responsive to Document Requests ##5, 6, and 8 is allowed.

As to any production, Defendants may provide documents in lieu of statements. See Fed. R. Civ. P. 33(d). All information ordered produced is subject to the protective order. Personal medical information, other private personal information, and personal identifiers (such as Social Security numbers, dates of birth, home addresses, and telephone numbers) shall be redacted.

III. DEFENDANTS' MOTION TO COMPEL PRODUCTION OF MR. SYKES'S AFFIDAVIT

A. Standard

Defendants move to compel production of an affidavit written by Plaintiffs' counsel and signed by percipient witness Robert Sykes. Plaintiffs oppose on the basis of the attorney work product doctrine. Codified at Fed. R. Civ. P. 23(b)(3), that doctrine "protects against disclosure of materials that a party, her attorney, or her representative prepares in anticipation of litigation . . . ." In re Grand Jury Subpoena, 220 F.R.D. 130, 141 (D. Mass. 2004). It protects work conducted in anticipation of litigation that "is reflected . . . in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways." See Hickman v. Taylor, 329 U.S. 495, 511 (1947). The doctrine exists to "preserve[] a 'zone of privacy' in which a party, his attorney, and in many cases his non-attorney 'representative' can prepare for litigation, 'free from unnecessary intrusion by his adversaries.'" In re Grand Jury Subpoena, 220 F.R.D. at 141 (quoting United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998)). As such, it does not extend to materials that "contain purely factual statements and do not include any opinions or impressions." Stamps v. Town of

15

Framingham, 38 F. Supp. 3d 134, 145 (D. Mass. 2014) (finding that the work product doctrine did not apply to police officers' notes that contained only factual information).

The doctrine comprises three elements: "(1) a document or tangible thing, (2) prepared in anticipation of litigation or trial, and (3) by or for another party, or by or for that party's representative[,] protecting the mental impressions, conclusions, or legal theories of a party's attorney concerning the litigation." FDIC v. Arrillaga-Torrens, 212 F. Supp. 3d 312, 368 (D.P.R. 2016) (citing Fed. R. Civ. P. 26(b)(3)). "The party seeking work product protection has the burden of establishing its applicability." In re Grand Jury Subpoena, 220 F.R.D. at 140. "If the party asserting the privilege meets this initial burden, the burden shifts to the opposing party 'to prove "substantial need" and "undue hardship" to obtain those materials.'" Murphy v. Kmart Corp., 259 F.R.D. 421, 428 (D.S.D. 2009) (quoting St. Paul Reinsurance Co. v. Commercial Fin. Corp., 197 F.R.D. 620, 628 (N.D. Iowa 2000)). The doctrine "is to be applied in a commonsense manner in light of reason and experience as determined on a case-by-case basis." Id. (quoting Pittman v. Frazer, 129 F.3d 983, 988 (8th Cir. 1997)).

There are two forms of work product, each of which receives a different level of protection. Namely, "courts . . . distinguish between 'opinion' work product and 'ordinary' work product—the former category encompassing materials that contain the mental impressions, conclusions, opinions or legal theories of an attorney, the latter category embracing the residue." In re San Juan Dupont Plaza Hotel Fire Litig'n, 859 F.2d 1007, 1014 (1st Cir. 1988). The parties agree that the affidavit at issue here is not opinion work product, so that category merits no further discussion. Ordinary work product receives only qualified protection. Under Rule 26(b)(3)(A)(ii), it is discoverable if the party seeking it "shows that it has substantial need for the

16

materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

"Third-party affidavits are normally not immune from disclosure [as attorney work product] for the very reason that an affidavit purports to be a statement of facts within the personal knowledge of the witness, and not an expression of opinion of counsel." Arrillaga-Torrens, 212 F. Supp. 3d at 368 (citations omitted). In Murphy v. Kmart Corp., 259 F.R.D. 421 (D.S.D. 2009), the District Court surveyed case law concluding, for substantially the same reason, that third-party affidavits are discoverable even when prepared by a party's counsel in anticipation of litigation[5]—a position that the Murphy court labelled the "majority view." See id. at 428-32 (collecting cases); accord Ford Motor Co. v. Edgewood Props., Inc., 257 F.R.D. 418, 421-23 (D.N.J. 2009) (collecting cases); Basaldu v. Goodrich Corp., No. 4:06-CV-23, 2009 WL 1160915, at *1-2 (E.D. Tenn. Apr. 29, 2009) (collecting cases, though noting that some District Courts have held to the contrary); Walker v. George Koch Sons, Inc., No. 2:07cv274 KS-MTP, 2008 WL 4371372, at *5-6 (S.D. Miss. Sept. 18, 2008) (collecting cases); Tuttle v. Tyco Elecs. Installation Servs., Inc., No. 2:06-CV-581, 2007 WL 4561530, at *2 (S.D. Ohio Dec. 21, 2007) (citations omitted).

B.   Analysis

Plaintiffs argue that the Sykes affidavit is ordinary work product. See Docket #127 at 6-7. Defendants argue that it is not, see Docket #125 at 4-7, and also argue in the alternative that if it is ordinary work product, Defendants have shown a substantial need for its production and have shown that they cannot acquire its contents absent undue hardship, see id. at 7-8.

---

[5] The court also rejected as unpersuasive two District Court cases holding to the contrary. See Murphy, 259 F.R.D. at 430-31 (discussing Lamer v. Williams Comm'ns, LLC, No. 04-CV-847-TCK-PJC, 2007 WL 445511 (N.D. Okla. Feb. 6, 2007), and 1100 West, LLC v. Red Spot Paint & Varnish Co., No. 1:05-cv-1670-LJM-WTL, 2007 WL 2904073 (S.D. Ind. May 18, 2007)).

I find the Sykes affidavit is not work product. Case law applying the work product doctrine to a third-party affidavit, even when the affidavit is prepared by a party's attorney, favors Defendants' position. See Arrillaga-Torrens, 212 F. Supp. 3d at 368; Edgewood Props., Inc., 257 F.R.D. at 421-23; Murphy, 259 F.R.D. at 428-32; Basaldu, 2009 WL 1160915, at *1-2; Walker, 2008 WL 4371372, at *5-6; Tuttle, 2007 WL 4561530, at *2. I find persuasive the rationale underlying this precedent. The work product doctrine does not apply to "purely factual statements" that "do not include any opinions or impressions." Stamps, 38 F. Supp. 3d at 145. Because affidavits are nothing more than statements of facts within the affiant's personal knowledge, they are not fairly characterized categorically as work product betraying an attorney's thoughts concerning litigation. While it is true that in some instances, an affidavit's contents could reveal attorney work product indirectly, I have reviewed the Sykes affidavit in camera, and I am satisfied that its production will not betray any protected work product.

Moreover, even if the affidavit were ordinary work product, I also find that Defendants' need for it outweighs Plaintiffs' interest in resisting its disclosure. At deposition, Mr. Sykes remembered little about the circumstances surrounding the affidavit's creation, see Docket #125-1 at 8-10, 17-18,[6] or about Defendants' execution of the no-knock warrant, see id. at 8-9, 12-15, 18-19. Indeed, some of Mr. Sykes's answers at deposition were incomprehensible. His written statement provides some measure of clarity concerning his account of the relevant events.

Thus, I grant Defendants' motion and ORDER that the Sykes affidavit be produced.

---

[6] Citations to Mr. Sykes's deposition testimony refer to page numbers assigned by the Court's ECF system, not the deposition transcript.

C.     Defendants' Request for Sanctions

Defendants' memorandum of law seeks fees and costs associated with their motion, arguing that "the litigation of this discovery dispute was wholly unnecessary" in light of applicable case law. Docket #125 at 9. Federal Rule of Civil Procedure 37(a)(5) provides that if a motion to compel discovery is granted, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the . . . attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, the rule further provides that the Court must not impose sanctions when "the opposing party's nondisclosure, response, or objection was substantially justified" or when "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii).

I decline to sanction Plaintiffs for opposing Defendants' motion. While the weight of the case law favors Defendants' position, the parties have not offered, and the Court's research has not revealed, any binding authority requiring that Defendants' motion be granted, and some courts in other districts have deemed third-party affidavits immune from disclosure. See, e.g., Murphy, 259 F.R.D. at 430-31 (citing Lamer, 2007 WL 445511, at *1; 1100 West, LLC, 2007 WL 2904073, at *2). I therefore find that Plaintiffs' opposition to Defendants' motion was substantially justified, rendering any sanction inappropriate.

## Conclusion

Plaintiffs' motion to compel further response by Defendants City of Worcester, Edward M. Augustus, Jr., and Garry Gemme to Plaintiffs' Discovery Requests, Docket #109, is GRANTED IN PART AND DENIED IN PART as set forth above.

19

Defendants' motion to compel the affidavit of non-party witness Robert Sykes, Docket #125, is GRANTED.

**All parties shall comply with this Order on or before April 27, 2018.**

/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge