UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIANNE DIAZ, individually and as mother and next friend of two minor children Jane Doe and Jane Roe, BRYANT ALEQUIN, and JOSHUA MATOS,<br>Plaintiffs,<br><br>v.<br><br>SGT. JAMES P. DEVLIN, DET. NICHOLAS E. NASON, DET. JEFFREY CARLSON, LT. DET. JOSEPH SCAMPINI, SGT. RICHARD CIPTRO, DET. JAMES CARMODY, OFFICER ANTHONY LORENT, DET. TERRENCE GAFFNEY, DET. JOHN MORRISSEY, DET. SHAWN BARBALE, DET. RONALD REMILLARD, OFFICER REBECCA AGUILAR, OFFICER ELIAS BAEZ, CITY OF WORCESTER, CHIEF GARY J. GEMME, CAPT. PAUL SAUCIER, CITY MGR. EDWARD J. AUGUSTUS, POLICE INFORMANT CRI-1, AND OFFICERS JOHN DOE 1-4,<br>Defendants | CIVIL ACTION<br>NO. 16-40039-TSH |

## MEMORANDUM AND ORDER ON
## DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT
### September 30, 2019

### Nature of the Case

Plaintiffs, Marianne Diaz ("Diaz"), individually and as mother and next friend of two minor children ( individually ("M1" and "M2" and collectively, the "minor children"), Bryant Alequin ("Alequin") and Joshua Matos ("Matos") have filed suit against the City of Worcester ("City") and individual Defendants Sergeant James P. Devlin, Detective Nicholas E. Nason

("Det. Nason"), Detective Jeffrey Carlson ("Det. Carlson"),[1] Lieutenant Detective Joseph Case Scampini, Sergeant Richard Cipro, Detective James Carmody, Officer Anthony Lorente, Detective Terrence Gaffney, Detective John Morrisey, Detective Shawn Barbale, Detective Ronald Remillard, Officer Rebecca Aguilar, Officer Elias Baez, Chief Gary J. Gemme, Captain Paul Saucier, City Manager Edward M. Augustus, Police Informant CRI-1 ("CI"), and Offs. John Doe 1-4.[2]

Plaintiffs allege that their rights were violated, and they suffered personal injuries when state and local law enforcement agents executed a search warrant at their apartment. They allege claims against the Defendants under 42 U.S.C. §1983 for violation of their Fourth, Fifth and Fourteenth Amendment Rights, corresponding claims under the Massachusetts Civil Rights Act, Mass. Gen. L. c. 12, §§11I ("MCRA") , and state law tort claims for false arrest, conspiracy, assault and battery, assault with a deadly weapon, intentional infliction of emotional distress, trespass, and fraud. In three separate motions, Defendants move for summary judgment on all counts. For the reasons set forth below, the motions are *granted*.[3]

---

[1] Det. Carlson was dismissed from the case by Order dated January 10, 2017.
[2] The Complaint also purports to name "John Does 1 through 4" as defendants. However, plaintiffs has made no effort to name those individuals as defendants, and the claims against them are hereby dismissed. *See Figueroa v. Rivera*, 147 F.3d 77, 82-83 (1st Cir. 1998) (complaint against John Doe defendants properly dismissed when there had been no attempt to serve them with complaint, and summary judgment motion was ripe for resolution). The court "is not obligated to 'wait indefinitely for [the plaintiff] to take steps to identify and serve ... unknown defendants.'" *Id.* (quoting *Glaros v. Perse,* 628 F.2d 679, 685 (1st Cir.1980)). Accordingly, John Does 1-4 and CRI-1 are dismissed from the case.

[3] Plaintiffs filed a Motion to Strike Defendants' Expert (Docket No. 199) and Defendants filed a Motion to Strike Plaintiffs' Additional Statements of Fact and Exhibits (Docket No. 208). Both motions are **DENIED**. I agree with Defendants that Plaintiffs have included a substantial number of unsupported facts and facts based on undisclosed information. While I am denying the motion to strike, I have not considered such facts in deciding Defendants motions for summary judgment. Plaintiffs' counsel should be aware that if they continue to file statements of fact which contain unsupported and irrelevant facts or facts based on materials which have not been disclosed, I will, in the future, strike their entire statement of facts.

## Background

This Court's review of the record is in the light most favorable to the party opposing summary judgment. *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 50 (1st Cir. 2000).

On August 17, 2015, Massachusetts State Police Officer Nicholas Nason ("Nason") applied for, and received a search warrant from a clerk magistrate of the Worcester District Court for the search of an apartment located at 17 Hillside Drive, Worcester, Massachusetts. That warrant authorized a search for an individual named James Jackson, two firearms, cell phones, and documents. Due to the possibility of firearms and the dangerousness of the search, the search was authorized at any time in the day or night, and had "no-knock" provisions. The State Police enlisted the Worcester Police Department Swat Team to affect entry on their behalf. Worcester Police Officers Scampini, Ciptro, Carmondy, Lorente, Gaffney, Morrissey, Barbale, Remillard, and Baez entered the property at 5:15 am on August 19, 2015. The Plaintiffs complain that that entry and subsequent securing of the apartment by the State Police and Worcester Police SWAT Teams caused them injury for which they seek redress. Specifically, the Plaintiff Ms. Diaz claims emotional injuries by being found naked in front of her children and police officers while the SWAT team was securing the apartment. Her daughters also claim emotional damages from the entry. Plaintiffs Mr. Alequin and Mr. Matos allege physical and emotional injuries due to excessive force.

### *Standard of Review*

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Essentially, Rule 56 [] mandates the entry of summary judgment 'against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.,* 50 F.3d 1115, 1121 (1st Cir.1995) (*quoting Celotex Corp. v. Catrett* 477 U.S. 317, 322, 106 S.Ct. 2548, (1986)). In making that determination, the Court views "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.,* 556 F.3d 20, 25 (1st Cir. 2009). When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256–57.

## Discussion

*Count I – 42 U.S.C. § 1983 via search warrant (All Plaintiffs v. Scampini, Nason, Devlin, Gaffney, Lorente, Remillard, Cipro, Baez, Barbale, Morrissey, Carmody, CI, John Doe 1-4)*

Section 1983 provides a private right of action against a person who, under the color of state law, deprives someone of "any rights, privileges, or immunities secured by the Constitution and [federal] laws." 42 U.S.C. § 1983. In order to state a claim under section 1983, "the plaintiff must show a deprivation of a federally secured right." *Harrington v. City of Nashua*, 610 F.3d 24, 28 (1st Cir. 2010).

Plaintiffs complain that the warrant authorizing the search was not supported by probable cause, thus making the search of the apartment unreasonable.[4] Plaintiffs' opposition to the Motion on Count 1 focuses on the validity of the warrant. They claim that because the search warrant was facially invalid, its execution resulted in an unconstitutional seizure of the Plaintiffs.

---

[4] Count I is less than clear in setting forth the Plaintiff's theory of recovery. It says, "As a direct and proximate result of Defendants' violations of their Constitutional Rights to be free of unreasonable search and seizure, and excessive force, the Plaintiffs were harmed as set forth herein." (Complaint ¶225, Docket No. 1)

4

The question presented is not whether the issuing Worcester District Court Clerk Magistrate erred in issuing the warrant, it is whether the magistrate so obviously erred that any reasonable officer would have recognized the error. *Messerschmidt v. Millender*, 565 U.S. 535, 556, 132 Sup. Ct. 1235, 1250 (2012).

The search warrant affiant, Defendant Nason, presented the proposed affidavit in support of the search warrant to a Clerk Magistrate of the Worcester District Court who issued the warrant. Where an alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued the warrant is the clearest indication that that officer acted in objective good faith. *U.S. v. Leon*, 468 U.S. 897, 922 923 (1994). I have reviewed the affidavit in support of the warrant and find that the issuing magistrate did not obviously err (if there was error at all).[5]

Defendants, State Police Officers, Nason and Devlin, were present during the search and entered the apartment after the SWAT team had secured the premises. While executing a search warrant officers may take reasonable action to ensure their own safety. *See Muehler v Mena*, 544 U.S. 93, 98-100 (2005). However, "special circumstances, or possibly a prolonged detention," might render a search unreasonable. *Michigan v Summers*, 452 U.S. 692, 705 (2013). Therefore, where an officer acts in a reasonable manner to protect themselves from harm, the Fourth Amendment is not violated. Generally, detention in handcuffs for a moderate amount of time alone does not constitute excessive force. *See Muehler v. Mena,* 544 U.S. at 100) (holding that although "duration of a detention can, of course, affect the balance of interests" in determining

---

[5] The affidavit in support of the application is supported by ample probable cause. The affiant recited the confidential sources' reliability and that the confidential source personally saw Jackson and firearms within 72 hours of the date of the affidavit at the premises.

the reasonableness of force used, a two- to three-hour period in handcuffs was insufficient to support an excessive force claim).

In *Los Angeles County v Rettele*, 550 U.S. 609 (2007), the Court held that officers acted in a reasonable manner to protect themselves. The officers obtained a valid search warrant for a home to look for four suspects. *Id.* at 610. One of the suspects owned a nine-millimeter Glock pistol. Unbeknownst to the officers the suspects had moved from the house a few months prior. Upon entering the home, the officers drew their weapons and ordered a couple out of bed, to put their hands up, and to not move. *Id.* The couple were naked in their bed and were held at gun point for approximately one to two minutes before the officers allowed the couple to be dressed. *Id.* The officers realized their mistake, apologized, and left within fifteen minutes. *Id.*

The Supreme Court in *Retelle* held these actions were reasonable to protect officer safety. The Court reasoned that "blankets and bedding can conceal a weapon," citing several cases which involved criminal defendants who stored weapons in their bed. *Id.* at 615. The Court explained that "the deputies needed a moment to secure the room and ensure that other persons were not close by or did not present a danger." *Id.* The Court indicated in dicta, however, that officers would not have been free to hold the couple motionless for longer than necessary. Therefore, while the search did cause extreme embarrassment for the couple, it did not violate the Fourth Amendment because such control was reasonably necessary to protect the officer's safety.

After entering the premises, Sergeant Devlin is alleged to have used abusive language towards Ms. Diaz ("shut the f*** up") during the time that the officers were present in her bedroom while the search was ongoing. After a search of the closet and under the bed, all but one officer exited the room, which amounted to less than a few minutes. With one officer remaining

6

in the room, Ms. Diaz was given her glasses and bathrobe, then was brought into the living room with her children. Ms. Diaz was never handcuffed.

I find that the temporary detention of the Plaintiffs at the apartment while the premises were being secured was reasonable and appropriate. Police have the authority to detain the occupants of the premises while a proper search is conducted. *Michigan v. Summers*, 452 U.S. 692, 694 (1981). Accordingly, I grant Defendant's Motions for Summary Judgement on Count 1, insofar as Count 1 alleges an illegal search and seizure under the Fourth Amendment.

*Count I – 42 U.S.C. § 1983 via Excessive Force (All Plaintiffs v. City of Worcester, Augustus, Gemme, Saucier, Scampini, Devlin and Cipro)*

Plaintiffs also allege a second illegal seizure as part of Count 1, premised on the allegation that Defendants used excessive force while restraining them. "Excessive force claims are founded on the Fourth Amendment right to be free from unreasonable seizures of the person." *Raiche v. Pietroski*, 623 F.3d 30, 36 (1st Cir. 2010) (*citing* U.S. Const. amend. IV; *Graham v. Connor*, 490 U.S. 386, 394-95, 109 S.Ct. 1865 (1989)). The Fourth Amendment is implicated when an officer uses "excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen." *Graham*, 490 U.S. at 395, 109 S.Ct. 1865. Excessive force is assessed "according to the constitutional touchstone of objective reasonableness, so we do not consider an officer's subjective "intent or motivation." *Raiche*, 623 F.3d at 36 (quoting *Graham*, 490 U.S. at 397, 109 S.Ct. 1865). Accordingly, to prevail, "a plaintiff must show that the defendant employed force that was unreasonable under all the circumstances." *Morelli*, 552 F.3d at 23 (*citing Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865 (1989)).

However, the right to make an arrest carries with it the right to use some degree of force. *See Graham,* 490 U.S. at 396. Only excessive force is actionable. *Gaudreault v. Municipality of*

*Salem,* 923 F.2d 203, 205 (1st Cir.1990) ("[N]ot every push or shove rises to the level of a constitutional violation."). Claims of excessive force are judged by an objective reasonableness standard. *Graham,* 490 U.S. at 397. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* at 397. Moreover, courts have acknowledged that "the realities of law enforcement often entail some force and strong language that, while offensive by ordinary standards, does not rise to the level of a constitutional deprivation." *See Inman v. Silciliano,* 2012 WL 1980408, *11 (D.Mass. 2012) *citing Flowers v. Fiore,* 359 F.3d 24, 34 (1st Cir. 2004) (finding no constitutional violation in the use of drawn weapons and handcuffs during investigatory stop and search).

First, Lieutenant Scampini, Sergeant Ciptro, and Officer Carmondy as supervisors had no hands-on contact with any of the Plaintiffs during the search, therefore their Motion for Summary Judgment on Count I is granted. Mr. Matos testified that after the SWAT team and officers entered that apartment, he was ordered to the ground and a shotgun was pointed at him. When Officer Barbale first encountered Mr. Matos in the apartment, Officer Gaffney had already issued commands and Mr. Matos was lying on the floor with his hands in view. Mr. Matos contends that an officer stepped on his back, but not on his hand, and did so until he was handcuffed by Officer Barbale. Mr. Matos claims that this handcuffing caused a fracture at the base of his third metatarsal, which was visible on an August 19, 2015 x-ray taken of his hand. The Defendants have submitted unrebutted evidence that the fracture was due to an injury that Mr. Matos sustained in July of 2015 after punching a window frame (Docket No. 185, *Statement of Undisputed Material Facts in Support of Worcester Defendants*, ¶ 30; Ex. 8). Accordingly, I grant Defendants' motion as to Mr. Matos.

Mr. Alequin was in the bathroom and heard someone yell "police" and the door was struck open. Mr. Alequin avoided the door when it first swung open, but stumbled backwards and hit his back on the sink. Mr. Alequin testified that a gun that looked like a rifle was directed at him when the bathroom door was broken open. He complied when the officers ordered him to the ground and was handcuffed. Mr. Alequin testified that during the one-minute period he was handcuffed on the floor, he was never struck by an officer, nor mishandled. He was then brought to his feet and led to the kitchen. Such actions were not unreasonable under the circumstances. Accordingly, Defendants' motion as to Mr. Alequin is granted.

*Count II – Supervisory Liability (All Plaintiffs v. City of Worcester, Augustus, Gemme, Saucier, Scampini, Devlin, and Cipro)*

Because I am granting the Defendants' motions for summary judgment, the Monell claims do not survive and accordingly, I grant the motion as to Count II.

*Count III – False Arrest (Diaz, Alequin and Matos v. Scampi, Nason, Devlin, Gaffney, Lorente, Remillard, Cipro, Baez, Barbale, Morrissey, Carmody and John Doe 1-4)*

To prevail on a false arrest claim, Plaintiffs would have to show that they were arrested, and that their arrest lacked probable cause. *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001). However, here, Plaintiffs were not arrested. *Summers*, 452 U.S. at 696. "[U]sing handcuffs, placing suspects in police cars, drawing weapons, and other measures of force more traditionally associated with arrests may be proper during an investigatory detention" and do not necessarily transform a detention into a custodial arrest. *U.S. v. Bullock*, 632 F.3d 1004, 1016 (7th Cir. 2011). Although Defendants acknowledge that Plaintiffs were "seized," within the meaning of the Fourth Amendment, that seizure was proper and fully authorized as attendant to the execution of the search warrant, as argued, *supra*. *See id*. For the reasons set forth above in the discussion of Count I, I grant the Defendant's Motions for Summary Judgement on Count III. I find that the

detention of the Plaintiffs while the apartment was being secured was reasonable and justified by the circumstances known to the officer at the time of the execution of the search warrant.

*Count IV – Conspiracy (All Plaintiffs v. Scampini, Nason, Devlin, Gaffney, Lorente, Remillard, Cipro, Baez, Barbale, Morrissey, Carmody, John Doe 1-4)*

"A civil rights conspiracy as commonly defined is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008) (quotation marks and citation omitted). Thus, in order to "present an adequate conspiracy claim, there must be allegations of (1) an agreement between two or more state actors ... (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Williams v. City of Boston*, No. 10-10131-PBS, 2013 WL 1336584, *11 (D.Mass. March 14, 2013). "In order to make out an actionable conspiracy under section 1983, a plaintiff has to prove not only a conspiratorial agreement but also an actual abridgment of some federally-secured right." *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001). A conspiracy may be a "matter of inference." *Estate of Bennett*, 548 F.3d at 178. However, "a claim of conspiracy to deprive a plaintiff of civil rights will not survive a motion to dismiss if it makes conclusory allegations without making supporting factual assertions." *Diaz v. Devlin*, 229 F. Supp. 3d 101, 111 (D.Mass. 2017) (*citing Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977)).

Here, Plaintiffs offer only conclusory allegations without factual support on the record of the conspiracy, which are insufficient to establish any genuine issues of material facts. I grant the Defendant's Motion as to Count IV.

*Counts V and VI – Assault and Battery (Diaz, Alequin and Matos v. Scampini, Nason, Devlin, Gaffney, Lorente, Remillard, Cipro, Baez, Barbale, Morrissey, Carmody and John Doe 1-4)*

*Count VI – Assault and Battery with a dangerous weapon (All Plaintiffs v. Scampini, Nason, Devlin, Gaffney, Lorente, Remillard, Cipro, Baez, Barbale, Morrissey, Carmody and John Doe 1-4)*

In Count V, Plaintiffs assert a state tort law claim against Plaintiffs for assault and battery. In Count VI, they asset a claim against them for assault and battery with a deadly weapon. Civil assault requires that a defendant "act[ed] intending to cause a harmful or offensive contact" with a plaintiff, "or [acted to create] an imminent apprehension of such a contact," and that a plaintiff was "thereby put in such imminent apprehension." *Restatement (Second) of Torts* §21 (1) (Am. Law Inst. 1965); *see also Conley v. Romeri*, 806 N.E.2d 933, 939 n.6 (Mass. App. Ct. 2004) (citing Restatement). "The intent required [for civil assault] is the intent to make the victim apprehensive of immediate physical harm." *Commonwealth v. Musgrave*, 649 N.E.2d 784, 787 (Mass.App.Ct. 1995) (quoting Nolan & Sartorio, *Tort Law* §12(1) (2d ed. 1989)). The tort of battery represents a completed assault in that the intention of a defendant to cause a harmful or offensive contact resulted, directly or otherwise, in such a harmful or offensive contact. *See Waters v. Blackshear*¸ 591 N.E.2d 184, 185-6 (Mass. 1992). "Under Massachusetts tort law, a defendant need not 'be able instantly to carry out the physical violence threatened by his conduct.'" *Kennedy v. Town of Billerica*, 617 F.3d 520, 539 (1st Cir. 2010) (quoting *Ginsberg v. Blacker*, 852 N.E.2d 679, 684 n.8 (Mass.App.Ct. 2006)). "[R]ather, '[i]t is enough that one is so close to striking distance that he can reach [a plaintiff] almost at once.'" *Id*. (finding that the focus of Massachusetts tort law is on those who actually committed the challenged conduct).

Claims of assault and battery can lie against police officers who use excessive force in the discharge of official duties. *See Raiche v. Pietroski*, 623 F.3d 30, 40 (1st Cir. 2010) (holding that defendant police officer used excessive force when he tackled motorcyclist who was pulled

11

over for not wearing helmet and for failing to stop when signaled to do so). In analyzing excessive force claims, courts determine whether "the defendant officer employed force that was unreasonable under the circumstances." *Jennings v. Jones*, 499 F.3d 2, 11 (1st Cir. 2007). Determining whether the force employed was unreasonable under the circumstances requires a court to balance three non-exclusive factors: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865 (1989).

Where, as here, Plaintiffs bring both a § 1983 excessive force claim and state-law claims for assault and battery, the reasonableness of the force used with respect to the § 1983 claim controls the assault and battery analysis. *Raiche,* 623 F.3d at 40. Accordingly, for the reasons set forth with respect to Count I, on Mr. Matos' and Mr. Alequin's excessive force claims, I find that the Plaintiffs have been unable to sustain their burden on assault and battery, and assault and battery with a dangerous weapon as to Mr. Matos.[6] Further, there is no evidence that the Defendants Devlin or Nason physically restrained or came in contact with any of the Plaintiffs, and while the complaint does allege instances of aggressive language, and brandishing of weapons, there are no allegations in support of these claims against Defendants Nason, Devlin, Scampini, Ciptro, Carmody.

*Count VII – Massachusetts Civil Rights Act (Diaz, Alequin and Matos v. Scampini, Nason, Devlin, Gaffney, Lorente, Remillard, Cipro, Baez, Barbale, Morrissey, Carmody and John Doe 1-4)*

In order to state a claim under the MCRA, Plaintiffs must assert facts that would support a finding that their exercise or enjoyment of rights secured by the Constitution or laws of either

---

[6] I am unaware of a tort of assault and batter with a dangerous weapon, as opposed to the crime of assault and battery by means of a dangerous weapon under Mass. Gen. L. c. 265, § 15A.

the United States or Massachusetts has been interfered with, or attempted to be interfered with, by threats, intimidation or coercion. *See* Mass. Gen. L. c. 12, § 11I. The MCRA is the state "counterpart" to Section 1983 and, in general, is coextensive therewith. The primary difference is that to succeed on an MCRA claim, a plaintiff must also show that the violation of rights occurred "by threats, intimidation or coercion." *Bally v. Northeastern Univ.,* 403 Mass. 713, 532 N.E.2d 49, 52 (1989). "A 'threat' means the 'intentional exertion of pressure to make another fearful or apprehensive of injury or harm.'" *Goddard v. Kelley,* 629 F.Supp.2d 115, 128 (D.Mass. 2009) (citation to quoted case omitted). "Intimidation" means putting a person in fear for the purpose of compelling or deterring his or her conduct. *Id.* "Coercion" means application of physical or moral force to another to constrain him to do against his will something he would not otherwise do. *Id.* The direct violation of a constitutional right does not establish a MCRA violation because "it is not an attempt to force someone to do something the person is not lawfully required to do." *Columbus v. Biggio,* 76 F.Supp.2d 43, 54 (D.Mass. 1999).

Defendants assert that Plaintiffs' conclusory allegations that the officers violated their rights under the MCRA "by threats, intimidation, and coercion" are insufficient to state a claim under the MCRA. Plaintiffs allege that Defendants' use of rude language and profanity to tell them to be quiet is actionable under the MCRA. This conduct does not, as a matter of law, satisfy the additional "threats, intimidation, or coercion" element of an MCRA claim. There being no allegations that any Defendant threatened, intimated, or coerced the Plaintiff in order to prevent them from exercising their civil rights, the Motion is denied on this count.

*Count VIII – Intentional infliction of Emotional Distress (All Plaintiffs v. Scampini, Nason, Devlin, Gaffney, Lorente, Remillard, Cipro, Baez, Barbale, Morrissey, Carmody and John Doe 1-4)*

In order to maintain a cause of action for intentional infliction of emotional distress under Massachusetts law, the plaintiff must establish that (1) the individual defendant intended to inflict emotional distress or that they knew or should have known that emotional distress was the likely result of their conduct; (2) the conduct of the defendant was "extreme and outrageous" and "beyond all possible bounds of decency and was utterly intolerable in a civilized community;" (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was "severe" and of such a nature "that no reasonable person could be expected to endure it." *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45, 355 N.E.2d 315 (1976). This standard is a high one in evaluating a motion for summary judgment, as "liability cannot be founded upon mere insults, threats, or annoyances." *Sena v. Commonwealth*, 417 Mass. 250, 263-264 (1994) (holding that the defendant police officers' conduct could not be "extreme" or "outrageous" as "neither applying for an arrest warrant, nor making an arrest pursuant to an issued warrant can be considered 'utterly intolerable in a civilized community.'" *Id*. (*quoting Agis,* 371 Mass. at 145).

Here, where the officers' entry into the residence and detainment of Plaintiffs was proper and authorized by the search warrant, and there was no Fourth Amendment violation, there is no intentional infliction of emotional distress claim as a matter of law. *See Lucas v. City of Boston*, 2009 WL 1844288, at *28 (D. Mass. June 19, 2009). Similarly, no conduct of any Defendant, in the context of carrying out the warrant, was so extreme and outrageous to go beyond all possible boundaries of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Foley v. Polaroid Corp.* 400 Mass 82, 99-100 (1987).

*Count IX – Trespass (All Plaintiffs v. Scampini, Nason, Devlin, Gaffney, Lorente, Remillard, Cipro, Baez, Barbale, Morrissey, Carmody and John Doe 1-4)*

Plaintiffs allege trespass by Defendant officers because the warrant called for forced entry and because the search was based on "false information and misrepresentation." A trespass is "an unprivileged, intentional intrusion on land in possession of another." *Dusoe v. Mobil Oil Corp.*, 167 F. Supp. 2d 155, 163 (D.Mass. 2001). Only an entry that is intentional and illegal subjects a defendant to liability for trespass. *New England Box Co. v. C & R Constr. Co.*, 313 Mass. 696, 707 (1943); *Restatement, Second, Torts* § 166 (1965). Thus, to maintain a claim for civil trespass, Plaintiffs must establish: 1) actual possession of the property by plaintiffs; 2) intentional entry; and 3) unlawful entry. *Walker v. Jackson*, 56 F. Supp. 3d 89, 95 (D.Mass. 2014) (citing *New England Box Co.*, 313 Mass. at 707). \

Here, the pertinent issue is whether the Defendants' entry into the Plaintiffs' residence on August 19, 2015 was unlawful. Because entry into the residence was proper and authorized by the search warrant, Defendants were entitled to rely upon the search warrant in this case. For the reasons set forth in Count I on the Plaintiffs claim for an unconstitutional seizure by virtue of the allegedly improper search warrant, that claim is denied.

## Conclusion

For the reasons stated above, I find Defendants motions for summary judgment are as follows:

1. Motion for Summary Judgment (Docket No. 174) is **granted**;

2. Motion for Summary Judgment (Docket No. 183) is **granted**;

3. Motion for Summary Judgment (Docket No. 187) is **granted**.

Also, as stated *infra*, Plaintiffs' Motion to Strike (Docket No. 199) is **denied** and Worcester Defendants' Motion to Strike (Docket No. 208) is **denied**.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**